UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SABRINA SIMMS, *pro se*,                    :
                                            :
                    Plaintiff,              :
                                            :
        -against-                           :          **OPINION AND ORDER**
                                            :          16-CV-534 (DLI)
COMMISSIONER OF SOCIAL SECURITY, :
                                            :
                    Defendant.              :
-------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

On January 23, 2013, Sabrina Simms ("Plaintiff") filed an application for Social Security

disability insurance benefits under the Social Security Act, alleging disability beginning February

1, 2012.[1]  (*See* Certified Administrative Record ("R."), Dkt. Entry Nos. 12-13 at 232, 270.)

Plaintiff's application was denied on March 7, 2013 (*Id.* at 129, 130-35), and she timely requested

a hearing before an Administrative Law Judge ("ALJ") (*Id.* at 136-37).  On March 18, 2014,

Plaintiff appeared with her counsel and testified before ALJ Hazel C. Strauss.  (*Id.* at 11-64.)  On

June 2, 2015, the ALJ held an additional hearing to obtain testimony from a medical expert and

vocational expert ("VE").  (*Id.* at 65-117.)  On August 24, 2015, the ALJ issued a decision finding

that Plaintiff was not disabled.  (*Id.* at 418-41.)  On December 1, 2015, the ALJ's decision became

final when the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-4.)

On February 1, 2016, Plaintiff filed this appeal, *pro se*, seeking judicial review of the

Commissioner's denial of benefits pursuant to 42 U.S.C. § 405(g).  (*See* Compl., Dkt. Entry No.

1.)  The Commissioner of Social Security ("Commissioner" or "Defendant") made an unopposed

motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings on July 20, 2016.  (*See*

---

[1]         Plaintiff's original application includes February 1, 2012 as the date of onset, though the actual date of onset
appears to be June 15, 2011.  (*See* R. at 17-18.)

Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Mem."), Dkt. Entry No. 16.)
For the reasons set forth below, the Commissioner's motion is granted and the instant appeal is
dismissed.

## BACKGROUND[2]

### A.  Non-Medical and Self-Reported Evidence

Plaintiff was born in 1969 and was 43 years old at the time she allegedly became disabled.[3]
(R. at 235.)  She obtained an associate's degree in accounting (*Id.* at 21, 54, 237), and, at the time
of her alleged disability, she was employed part-time as a direct care counselor for mentally ill
adults (*Id.* at 21-22, 237, 261.)  On June 15, 2011, Plaintiff was struck by an individual she was
caring for, resulting in injuries to her neck, right shoulder, right arm, right hand, headaches,
memory loss, and back spasms.  (*Id.* at 21, 236.)  Plaintiff did not return to work after June 15,
2011.  (*Id.* at 21.)

In a disability report dated January 23, 2013, Plaintiff stated that she was five feet seven
inches tall and weighed 125 pounds.  (*Id.* at 236.)  In a function report dated February 21, 2013,
she reported that she "can care for [her]self[,] it just take[s] a little more time."  (*Id.* at 248.)  The
function report noted that she has three children whom she cooks for daily unless the pain is
"unbearable."  (*Id.* at 248-49.)  On weekdays, she takes her son to school, looks for work during
the day, and then brings her son home from school.  (*Id.* at 248.)  She also reported that she cleans,
does laundry and irons, goes outside during the weekdays (*Id.* at 250), shops once per month for
two or three hours (*Id.* at 251), and, on a daily basis, engages in activities such as reading and

---

[2]    Having thoroughly and carefully reviewed the administrative record, the Court finds the Commissioner's factual background accurately represents the relevant portions of the record.  Accordingly, the background information that follows is taken substantially from the "Statement of Facts" section of the Commissioner's motion.

[3]    As such, Plaintiff was a "younger person" as defined in 20 C.F.R. § 404.1563(c).

socializing with her children (*Id.* at 251-52). Plaintiff reported that she is not able to lift as much as she could prior to being injured, and her injury affects her ability to walk, climb stairs, kneel, squat, and reach for items. (*Id.* at 252-53.) She further reported blurred vision when she experiences a "bad" headache. (*Id.* at 253.) She reported experiencing headaches "almost every day" that sometimes are accompanied by nausea and vomiting. (*Id.* at 258.) She is right handed, and wears prescription eye glasses. (*Id.* at 253-54.)

In an appeal disability report submitted May 9, 2013, Plaintiff reported that her condition had worsened: she was experiencing migraines almost every other day, severe pain in the neck and right shoulder, and an inability to hold objects in her right hand for prolonged periods of time without dropping them. (*Id.* at 272.) She further reported new illnesses and conditions, including depression and carpal tunnel syndrome in her right hand. (*Id.* at 273.)

**B.      Medical Evidence before the ALJ**

During the period between Plaintiff's onset of disability and the ALJ's decision, Plaintiff saw a series of doctors and underwent several diagnostic procedures. On August 10, 2011, Plaintiff underwent a magnetic resonance imaging ("MRI") at the referral of Dr. Coral Elcock, Plaintiff's chiropractor. (*Id.* at 384.) The MRI revealed degrees of bulging at C3-C4, C4-C5, C5-C6, and C6-C7, hypertrophic changes, loss of normal signal intensity, and a slight reversal of the cervical curvature. (*Id.* at 384-85.) Plaintiff also underwent electromyographic ("EMG") and nerve conduction ("NCV") testing on September 7, 2011 at the referral of Dr. Lam Cu Quan, M.D., Plaintiff's physical medicine and rehabilitation doctor. (*Id.* at 348.) These tests indicated mild neuropathy at the wrist consistent with carpal tunnel syndrome, but did not indicate cervical radiculopathy. (*Id.*)

Dr. Quan examined Plaintiff on February 2, 2012 for claimed injuries to the head, neck, and abdomen as a result of a work-related accident on June 15, 2011. (*Id.* at 346.) At the time of the exam, Plaintiff did not appear to be in acute distress, and she mounted the exam table without assistance. (*Id.*) Dr. Quan noted that Plaintiff's cervical spine was tender, exhibited muscle spasms upon palpitation, had a reduced range of motion, and a Spurling's/Jackson's test (for nerve root pain) was positive on the right side. (*Id.*) A straight leg raise test on the lumbar spine was negative. (*Id.* at 347.) Plaintiff's right shoulder exhibited tenderness, and Plaintiff's right hand and wrist exhibited positive Phalen's and Tinel's tests. (*Id.*) Plaintiff had full range of motion of the lumbar spine, right shoulder, and right hand/wrist. (*Id.*) A neurological examination revealed that Plaintiff had reduced sensation in the right hand, 4/5 muscle strength in the right extremities (including the right knee and ankle), and equal and unremarkable reflexes. (*Id.*) Dr. Quan reviewed Plaintiff's MRI and EMG/NCV and found Plaintiff was experiencing "post contusion headache syndrome" and "cervical/neck pain – disc bulges." (*Id.* at 348) Dr. Quan found Plaintiff to be temporarily 100% disabled, referred Plaintiff to a neurologist, suggested she avoid strenuous activities, complete a home exercise program, and attend physical therapy twice a week for four weeks. (*Id.*)

In connection with Plaintiff's worker's compensation claim, Jeffrey Perry, D.O., also examined her injuries on February 10, 2012. (*Id.* at 349.) Similar to Dr. Quan, Dr. Perry found that Plaintiff had limited cervical range of motion, but had normal range of motion elsewhere, exhibited a negative straight leg raise test, and had intact sensation. (*Id.* at 350.) He concluded that further medical treatment was "not medically necessary or medically justifiable," noting that claimant was looking for work in her field, and he was of the opinion that she was not disabled. (*Id.* at 350-51.)

Plaintiff subsequently saw Dr. Quan four more times on March 1, May 3, June 11, and July 12, 2012, and Dr. Quan continued to find that Plaintiff had a temporary 100% disability. (*Id.* at 334-45.)

Dr. Elcock examined Plaintiff on September 27, 2012 for neck pain radiating to the right side and hands, as well as headaches. (*Id.* at 331-32.) Similar to the other doctors, Dr. Elcock noted a reduced cervical range of motion, and also muscle spasms at the cervical paraspinal musculature. (*Id.* at 331.) She diagnosed Plaintiff with cervical radiculopathy and cervical strain/sprain and found that Plaintiff temporarily had 100% disability. (*Id.* at 332.)

Plaintiff next saw Ajoy K. Sinha, M.D., on November 28, 2012 for right wrist, right shoulder, and neck pain. (*Id.* at 402.) Dr. Sinha observed positive Tinel's and Phalen's tests, as well as positive right shoulder impingement and Hawkings tests. (*Id.*) Dr. Sinha suggested carpal tunnel surgery to Plaintiff, the use of a brace for her right wrist, and conservative care for her shoulder and neck. (*Id.*)

Plaintiff returned to Dr. Elcock on January 22, 2013 for neck pain radiating to the right side of the body and hands and headaches. (*Id.* at 328-30.) Dr. Elcock found that Plaintiff had pain upon palpation of the cervical spine from C4-C7 and reduced range of motion of the cervical spine and upper extremities. (*Id.* at 328.) She continued to find that Plaintiff had a temporary 100% disability and advised her to avoid activities that would cause stress to the spine. (*Id.* at 329-30.)

On February 7, 2013, Plaintiff saw Sukhbir S. Guram, M.D., of New York Spine Specialist. (*Id.* at 368.) Dr. Guram noted reduced range of motion in the cervical spine, tenderness, and spasms. (*Id.* at 369.) Dr. Guram diagnosed Plaintiff with cervical sprain and right carpal tunnel syndrome and advised plaintiff to refrain from activity that could exacerbate her symptoms,

including heavy lifting, carrying, or bending. (*Id.*) Plaintiff declined to receive epidural steroidal injections. (*Id.*) Dr. Guram also requested a new MRI. (*Id.*)

Maria Sesin, Ph.D., examined Plaintiff on February 27, 2013 for her mental health complaints. (*Id.* at 360.) Dr. Sesin reported that Plaintiff was well-groomed, cooperative, and calm, though her mood was depressed. (*Id.*) Plaintiff denied suicidal ideation or intent. (*Id.*) Dr. Sesin administered the Beck Depression Inventory and Beck Anxiety Inventory and found Plaintiff to be in the severe range for depression. (*Id.* at 361.) Dr. Sesin diagnosed Plaintiff with a major depressive episode, severe, and chronic pain/disability. (*Id.* at 363-64.)

Linell Skeene, M.D., an orthopedist and the consultative examiner, examined Plaintiff on March 1, 2013 at the Commission's request. (*Id.* at 353-55.) Plaintiff described her job-related injury and complained of neck pain with an intensity of 4/10 radiating to the right arm, with intermittent numbness in the fingers of the right arm. (*Id.* at 353.) Plaintiff reported to Dr. Skeene that she had received a single cervical epidural block, which she had found unhelpful for her symptoms, and physical therapy provided only temporary improvement of her symptoms. (*Id.*) Plaintiff stated that the neck pain was aggravated by reaching and lifting objects weighing over ten pounds. (*Id.*) She is an asthmatic, but other than an inhaler, she only reported taking Tylenol. (*Id.*) Plaintiff stated that she is able to care for herself and do household chores. (*Id.* at 354.)

Dr. Skeene's examination revealed limited range of motion of the cervical spine and mild paracervical muscle spasm. (*Id.*) Plaintiff had a full range of motion of the upper extremities, thoracic, and lumbar spine, and a straight leg raise test was negative. (*Id.* at 354-55.) Dr. Skeene opined that Plaintiff had a moderate limitation for reaching and heavy lifting due to a limited range of motion of the cervical spine. (*Id.* at 355.)

A March 6, 2013 MRI of the cervical spine indicated disc herniations at C4-C5, C5-C6, and C6-C7, with neuroforaminal narrowing, and disc bulges at C2-C3 and C3-C4 with neuroforaminal narrowing. (*Id.* at 356.) Dr. Guram reviewed the results of the March 6, 2013 and August 2011 MRIs with Plaintiff on March 7, 2013. Dr. Guram's diagnoses remained the same, and Plaintiff was advised to avoid activities that would exacerbate her symptoms, including heavy lifting, carrying, or bending. (*Id.* at 367.)

Plaintiff returned to Dr. Sinha on June 26, 2013, complaining of neck pain radiating to the right shoulder and right wrist pain (aggravated by lifting, carrying, and overhead activities). (*Id.* at 398.) Dr. Sinha noted a right shoulder impingement and reduced range of motion of the cervical spine. (*Id.* at 399.) Examination also showed positive Phalen's and Tinel's tests. (*Id.*) As a result, Dr. Sinha recommended that Plaintiff receive carpal tunnel surgery (*Id.* at 400), which was performed on August 13, 2013 (*Id.* at 393-94). Dr. Sinha also recommended Plaintiff avoid prolonged sitting, lifting, and overhead activities. (*Id.* at 400.)

Demetrios Mikelis, M.D., of New York Spine Specialist, examined Plaintiff on March 14, 2014. (*Id.* at 386.) Dr. Mikelis made findings similar to Dr. Guram (*Id.* at 386-87), and he recommended Plaintiff refrain from activities that would exacerbate her symptoms. (*Id.* at 387.)

Plaintiff again saw Dr. Sinha on March 17, 2014 with continued complaints of neck pain (aggravated by sitting) and shoulder pain (aggravated by lifting, carrying, and overhead activities). (*Id.* at 396.) Dr. Sinha's findings were unchanged from previous exams, and Dr. Sinha concluded that Plaintiff had a temporary 100% disability. (*Id.* at 396-97.)

Dr. Mikelis again saw Plaintiff on December 2, 2014, and his findings and recommendations remained unchanged. (*Id.* at 415-16.)

**C.      Hearings Before the ALJ**

At the March 18, 2014 hearing before the ALJ, Plaintiff initially testified upon questioning from the ALJ that she was able to perform household chores, including cooking, cleaning, and doing laundry, drive her son to and from school, shop, and read every day. (*Id.* at 36-37). She subsequently testified upon questioning from her attorney that pain in her right arm made it difficult to lift things, use buttons and zippers, tie her shoes, or write (*Id.* at 48), and that such pain made it difficult for her "to do anything." (*Id.* at 46.) Though her doctor had prescribed pain medication, Plaintiff refused to take prescription medications because she did not "want to get hooked on drugs." (*Id.* at 59-60.) The only medication Plaintiff took for her pain was Tylenol. (*Id.* at 35.) In response to questions from the ALJ, she testified that she had no issues with walking, standing, or sitting. (*Id.* at 47-48.) In response to subsequent questioning from her own attorney, however, Plaintiff testified that she only was able to sit or stand for approximately 30 minutes to an hour before having to change positions due to pain and only could walk two or three city blocks before needing to take a break. (*Id.* at 56-57.) Though she initially testified that she could lift an estimated fifteen to twenty pounds (*Id.* at 50), she later testified that she could not lift a five-pound bag of sugar when her hand was hurting. (*Id.* at 58.)

Plaintiff testified that she "always" has "some sort of headache," though severe headaches only occurred approximately once or twice per month. (*Id.* at 22-23.) By taking Tylenol daily for her headaches she was "able to go about her day." (*Id.* at 24.) At the time of the March 18, 2014 hearing, Plaintiff testified that she was no longer seeing a doctor for her headaches. (*Id.* at 24, 55.)

Plaintiff testified that, since sustaining her injury, she has seen several doctors for evaluation and treatment of her symptoms, including Dr. Sebastian Lattuga of New York Spine Specialist; Dr. Lam C. Quan of Sunny View Medical; and Dr. Coral Elcock, a chiropractor. (*Id.*

at 24-29.)  Plaintiff also had received treatment for carpal tunnel syndrome from Dr. Ajoy Sinha (*Id.* at 28, 31), had seen a psychologist, Dr. Marie Sesin (*Id.* at 37-38), and Dr. Jagga Alluri for headaches (*Id.* at 60-61).

On June 2, 2015, the ALJ continued the hearing and obtained expert testimony from medical expert Dr. Ollie Raulston and VE Bruce Martin.  (*Id.* at 69, 100.)  Dr. Raulston testified that while Plaintiff would have functional limitations, including limitations on the amount of weight she could lift[4], no overhead reaching with her right arm, and limitations to the duration she can stand, walk, or sit, Plaintiff's impairments alone and in the aggregate did not meet or medically equal a listed impairment.  (*Id.* at 76-78.)  The ALJ asked the VE whether, given Plaintiff's age, education, work experience, and functional limitations, other jobs existed in the national economy which she could perform.  (*See Id.* at 109.)  The VE identified three unskilled, light jobs from the Dictionary of Occupational Titles ("DOT"): (i) photocopy machine operator (DOT Code 207.685-014); (ii) machine attendant-carting (DOT Code 920.685-032); and (iii) usher/ticket taker (DOT Code 344.667-014).  (*Id.* at 110-11.)

## DISCUSSION

### A.    Standard of Review

Unsuccessful Social Security disability benefits claimants may seek judicial review of the Commissioner's denial of their benefits in the district court "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. § 405(g).  In reviewing the final determination of the Commissioner, the district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Moran v. Astrue*, 569 F.3d 108, 112

---

[4]    Dr. Raulston would restrict Plaintiff to "light work," which involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects no more than 10 pounds.  20 C.F.R. § 404.1567(b).

(2d Cir. 2009).  The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act."  *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (internal citations and quotation marks omitted).  The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran*, 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 1990)) (internal quotation marks omitted).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remanding to the Commissioner is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations."  *Manago v. Barnhart*, 321 F. Supp.2d 559, 568 (E.D.N.Y. 2004).  A remand is also appropriate "[w]here there are gaps in the administrative record."  *Rosa v. Callahan*, 168 F. 3d 72, 82-83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)) (internal quotation marks omitted).  "[I]t is the rule in [the Second] [C]ircuit that the [social security] ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (quoting *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999)).

**B.**      **Disability Claims**

A claimant must be disabled to receive disability benefits under the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can . . . be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof in establishing that she is disabled. Disability must be established through medical and other evidence that the Commissioner may require, presented as "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, [] show[ing] the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities" that could reasonably produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

In determining whether a claimant is disabled under the Act, the ALJ must perform a five-step inquiry. 20 C.F.R. § 404.1520(a)(4). At the first step, the claimant is not disabled if she is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ considers, without respect to age, education, or work experience, whether the claimant's impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). Impairments are severe when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). At the third step, the ALJ will determine whether the impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). *See* 20 C.F.R. §§ 404.1520(a)(iii), (d). If no impairment exists, the ALJ then makes a finding about the claimant's residual function capacity ("RFC"). 20 C.F.R. § 404.1520(e). At step four, a claimant is not disabled if she can perform past relevant work, 20 C.F.R. § 404.1520(a)(iv), and at step five, the ALJ determines whether claimant could perform other work existing in the national economy in significant numbers, considering claimant's age, education, and prior work experience. 20 C.F.R. §§ 404.1520(a)(v), (e), (f).

### C.     The Decision

On August 24, 2015, the ALJ issued a decision denying Plaintiff's claims.  (R. at 418-41.) The ALJ performed the necessary five-step inquiry in determining that Plaintiff had the RFC required to perform light work and, therefore, was not disabled.  (*Id.* at 434-36.)  At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2012, the alleged onset date.  (*Id.* at 423.)   At the second step, the ALJ found severe impairments: degenerative disc disease of the cervical spine and right carpal tunnel syndrome.  (*Id.*)  The ALJ noted, however, that Plaintiff's major depressive disorder, right shoulder impingement, and headaches caused only a minimal limitation on Plaintiff's ability to work, and, therefore, were not severe.  (*Id.* at 423-25.)  At the third step, the ALJ concluded that Plaintiff's impairments did not meet or medically equal an impairment included in the Listings, specifically noting that Plaintiff did not meet the criteria for Listing 1.00 (musculoskeletal).  (*Id.* at 425.)

At the fourth step, the ALJ found that the Plaintiff was unable to perform her past relevant work as a psychiatric aide, which requires a "medium exertional" level, but was "performed by the claimant at the heavy exertional level."  (*Id.* at 434 (citing 20 C.F.R. § 404.1565)).   The ALJ accorded limited weight to the opinions of Dr. Elcock, Dr. Quan, and Dr. Perry, since their examinations were for the purposes of Plaintiff's Worker's Compensation claim, which uses standards different from Social Security Disability, and also Dr. Elcock is not an acceptable medical source since she is a chiropractor.  (*Id.* at 433.)  The ALJ gave considerable weight to the opinions of Dr. Mikelis (Plaintiff's treating physician), Dr. Skeene (the consultative examiner), and Dr. Guram, whose opinions were consistent with Dr. Raulston, the Commissioner's medical expert.  (*Id.*)  The ALJ noted that "[t]he medical records fail to confirm the accuracy of [Plaintiff's] assertions and hearing testimony."  (*Id.*)

At the fifth step, in consideration of Plaintiff's "age, education, work experience, and residual functional capacity," the ALJ found that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" according to the applicable Medical-Vocational Guidelines at 20 C.F.R. § 404.1569. (*Id.* at 434.)

## D. Analysis

The Commissioner moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's benefits on the grounds that substantial evidence supports its determination that Plaintiff was not disabled and that the Commissioner applied the correct legal standard. (*See generally* Def.'s Mem.) Though *pro se* Plaintiff was given an additional opportunity to respond to the Commissioner's motion, Plaintiff failed to do so, and the Commissioner's motion is unopposed. The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Accordingly, the Court interprets the Complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted); *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002). Upon review of the record, the Court finds that the ALJ applied the correct legal standards and her decision is supported by substantial evidence. Accordingly, for the reasons set forth below, the denial of benefits is affirmed.

### 1. The ALJ Adequately Developed the Record

The ALJ has "an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d. Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). In the Second Circuit, "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a

benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted). This obligation exits "'even when the claimant is represented by counsel . . . .'" *Rosa*, 168 F.3d at 79 (internal quotation marks and citation omitted). This obligation includes "seek[ing] additional information from [the treating physician] *sua sponte*, *Shaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998), and making "every reasonable effort" to get the required medical documentation, 20 C.F.R. § 416.912(b)(1).[5]

Here, Plaintiff was represented at her hearing, and the ALJ sufficiently developed the administrative record. Plaintiff indicated at the hearing that she was being treated by Dr. Lattuga (R. at 24), Dr. Quan (*Id.* at 26-27), Dr. Sinha (*Id.* at 27-28), Dr. Elcock (*Id.* at 29), Dr. Sesin (*Id.* at 37-38), and Dr. Alluri (*Id.* at 60). At the time of the hearing, Plaintiff's medical records were incomplete in that certain treating physicians had provided incomplete records, or no records of treatment. (*See, e.g.*, *Id.* at 25-30.) Plaintiff's counsel agreed to contact Dr. Lattuga (*Id.* at 32-33), Dr. Alluri (*Id.* at 61-62), Dr. Sinha (*Id.* at 50), and Dr. Sesin (*Id.* at 37-40) for additional medical records. The ALJ agreed to issue subpoenas to Dr. Sinha and Dr. Quan (*Id.* at 52) and assist Plaintiff's counsel by issuing additional subpoenas as needed (*Id.* at 62). With significant gaps in the medical record, the ALJ closed the hearing until the medical record was more fully developed. (*Id.* at 63-64.)

The record indicates that the ALJ ultimately issued subpoenas to Dr. Sesin (*Id.* at 118-20), Dr. Quan (at several possible addresses) (*Id.* at 175-77, 181-89), and Dr. Sinha (*Id.* at 178-80). The subpoenas sent to Dr. Quan could not be delivered (*Id.* at 380-81, 391-92), and Dr. Sinha provided a report detailing the carpal tunnel surgery she performed on Plaintiff as well as narrative progress reports from their appointments. (*Id.* at 393-94, 396-404.) Dr. Lattuga's office provided

---

[5]     "Every reasonable effort" is defined as making an initial request, followed by a follow-up request between ten and twenty days after the initial request.  20 C.F.R. § 416.912(b)(1)(i).

medical records that detailed assessments from Drs. Guram and Mikelis. (*Id.* at 382-89.) It does not appear that any additional records were obtained through Plaintiff's counsel's efforts or the ALJ's subpoenas.

Given the ALJ's and Plaintiff's counsel's efforts to develop the medical record following the first hearing, and the presence of opinions and medical records from four treating physicians, the Court finds that the ALJ adequately developed the record.

### 2. *Substantial Evidence Supports the ALJ's Decision*

Substantial evidence in the record supports the ALJ's decision at every step. The record supports the ALJ's determination that Plaintiff had not been engaged in substantial gainful activity. Plaintiff testified that she had not worked since June 15, 2011. (*Id.* at 21.) The record also supports the ALJ's determination that the Plaintiff suffered from severe impairments of degenerative disc disease of the cervical spine and right carpal tunnel syndrome that had more than a minimal effect on her ability to work. (*Id.* at 423.) Plaintiff's testimony that she could only stand or sit for 30 minutes before having to change positions and could only walk a few city blocks before needing a break (*Id.* at 56-57), had difficulty lifting things, using zippers and buttons, writing, and tying her shoes (*Id.* at 48) provides sufficient support for the ALJ's determination that her impairments had more than a minimal effect on her ability to work and, therefore, were severe.

There is also substantial evidence in the record to support the ALJ's determination that Plaintiff's mental impairment did not have more than a minimal impact on her ability to perform work. (*Id.* at 423-24.) In terms of daily living, Plaintiff cares for herself (*Id.* at 248), cleans, does laundry, and irons the clothes (*Id.* at 250), shops at least once per month (*Id.* at 251), drives her son to school every day, and does household chores (*Id.* at 36-37). Plaintiff's social functioning also was not more than mildly impacted. Plaintiff testified that she only saw Dr. Sesin five or six times, and never saw Dr. Rombom, who signed her evaluation. (*Id.* at 424.) While the ALJ

subpoenaed additional records from Dr. Sesin, no additional records were submitted. There is no evidence in the record that Plaintiff had difficulty with social relationships; indeed, she reports socializing with her children without issue. (*Id.* at 252.) In concentration, persistence and pace, Plaintiff testified that she tries to read every day (*Id.* at 37), watches television (*Id.* at 41), and drives her son to school (*Id.* at 36), all of which require the ability to concentrate. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff had no more than a mild limitation to her concentration, persistence and pace. Finally, Plaintiff suffered no episodes of extended decompensation.

Though Plaintiff was diagnosed with asthma, she last suffered an asthma attack in 2000. (*Id.* at 353.) And while Plaintiff testified that she suffers from headaches, treatment with over-the-counter medications alleviates her symptoms, and, at the time of the hearing, she no longer was receiving treatment for her headaches. (*Id.* at 24, 55.) The record also shows some evidence of right shoulder impingement, but the medical expert testified that it was unlikely to last more than ten months. (*Id.* at 91-93.) Therefore, there is substantial evidence supporting the ALJ's determination that these impairments were not severe. Dr. Raulston, the medical expert, concluded that the Plaintiff's impairments did not meet or exceed the criteria of Listing 1.00 (musculoskeletal), and specifically Listings 1.02 (major dysfunction of a joint(s)) and 1.04 (disorders of the spine). (*Id.* at 76-77.)

Substantial evidence also supports the ALJ's determination that Plaintiff had an RFC for a light range of work[6] and was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, sitting up to six hours, and standing or walking for up to six hours in an eight-hour work day. (*Id.* at 425.) The ALJ followed the two-step process of (1) determining whether there is an

---

[6]    "Light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

underlying medically determinable physical or mental impairment that would be expected to produce the Plaintiff's pain or symptoms and (2) then evaluating the intensity, persistence, and limiting effects of the Plaintiff's symptoms and determine the extent to which they limit Plaintiff's functioning.  (*Id.*)

The ALJ weighed evidence from several physicians who had a treating relationship with, or treated Plaintiff:  Dr. Guram, Dr. Lattuga, Dr. Quan, Dr. Elcock, Dr. Sinha, Dr. Elcock, Dr. Skeene, and Dr. Perry.  She also weighed evidence from Dr. Raulston, the medical expert.

As a starting point, the ALJ's physical disability determination is supported by Plaintiff's own testimony.  *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d. Cir. 2010) ("[P]laintiff's own testimony demonstrate[s] that substantial evidence supports . . . the ALJ's determination.").  She testified that she could lift fifteen to twenty pounds with her right hand (R. at 50), she had no issues with sitting other than getting "fidgety" (*Id.* at 48), and she had no issues walking prior to an accident where she injured her leg approximately one month prior to the hearing (*Id.* at 47-48).  Plaintiff inconsistently testified that she had no problem with standing (*Id.* at 48), and that she could only sit or stand for periods of thirty minutes to one hour before having to change positions (*Id.* at 56-57).

The ALJ's RFC determination also is supported by the diagnoses of two of Plaintiff's treating physicians, Dr. Guram and Dr. Mikelis.  Specifically, Dr. Guram found that Plaintiff should refrain from activities that could exacerbate her symptoms, including "heavy lifting, carrying or bending."  (*Id.* at 367, 369, 387.)  Dr. Mikelis similarly noted that Plaintiff should avoid "heavy lifting, carrying or bending."  (*Id.* at 416.)  Notably, the ALJ's RFC determination for light work does not require heavy lifting.

The ALJ gave "great weight" to the opinion of the medical expert, Dr. Raulston, who has familiarity with the Social Security disability process.  (*Id.* at 433.)  Dr. Raulston, whose testimony was based on a review of the record, diagnosed Plaintiff with degenerative disc disease of the cervical spine from C3-C7, which he classified as mild to moderate, and chronic cervical strain.  (*Id.*at 75.)  He also diagnosed Plaintiff with carpal tunnel syndrome of a moderate degree, and noted that she suffered from headaches.  (*Id.* at 75-76.)  In concluding that Plaintiff does not meet an impairment in the Listings, Dr. Raulston considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine) and found that Plaintiff's impairments did not meet the requirements of those Listings.  (*Id.* at 76-77.)  Dr. Raulston's conclusion that Plaintiff had limitations, including only lifting twenty pounds occasionally and ten pounds frequently, is consistent with the opinions of both Dr. Mikelis and Dr. Guram.  (*Id.* at 77.)

Dr. Raulston noted that Dr. Sinha indicated that Plaintiff had a problem with her right shoulder, including possible right shoulder impingement, though there was no indication that the issue had lasted or would last for twelve months as required under the Act.  *See* 42 U.S.C. § 423(d)(1)(A).  (R. at 92-93.)  In any event, Dr. Raulston testified that accepting Dr. Sinha's opinions as true would only change his assessment of Plaintiff's limitations to include additionally no overhead reaching.  (*Id.* at 89.)  Notably, the VE did not identify any jobs available in the national economy that require overhead reaching.  (*Id.* at 110-12.)

The ALJ also gave significant weight to the portions of Dr. Skeene's opinions that were consistent with Dr. Raulston's opinions.  (*Id.* at 433.)  Dr. Skeene found that Plaintiff had a limited range of motion in the cervical spine that caused a moderate limitation for heaving lifting and reaching.  (*Id.* at 355.)  This supports a finding of light work, and given the consistencies between Dr. Skeene's and Dr. Raulston's opinions, the ALJ properly weighed Dr. Skeene's opinion. *Nelson*

*v. Colvin*, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) (ALJ's "light work" determination supported by doctor's finding of a "mild to moderate limitation"); *See also* 20 C.F.R. § 416.927(c)(4) ("[G]enerally, the more consistent and opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ properly gave little weight to the opinions of Dr. Perry, Dr. Quan, and Dr. Elcock, who were evaluating Plaintiff in relation to her worker's compensation claim. *See Bitz v. Colvin*, 2016 WL 1595383, at *10 (E.D.N.Y. Apr. 20, 2016) (quoting *Hankerson v. Harris*, 636 F.2d 893, 896-97 (2d Cir. 1980)) ("[W]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered."); *See also* 20 C.F.R. § 404.1504 ("[A] decision by any other governmental agency . . . about whether [a claimant] is disabled . . . is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules."). Worker's compensation claims are judged by different criteria, and, as such, they are only entitled to some weight in the context of Social Security disability claims. Additionally, while the ALJ properly noted that Dr. Elcock, who is a chiropractor, is not an acceptable medical source, *see* 20 C.F.R. § 404.1513, the ALJ did not discount her opinions entirely, *see Rivera v. Bowen*, 665 F. Supp. 201, 206 (S.D.N.Y. 1987) (citing *Monguer v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)) ("All courts agree that the opinion of a treating chiropractor . . . must be accorded *some* weight . . . .") (emphasis original).

The ALJ properly found that Plaintiff's testimony was not entirely credible. (*Id.* at 428.) While Plaintiff testified that her pain made it difficult to "do anything" (*Id.* at 46), her testimony and the medical records indicate that she cared for herself, did many household chores, and read, watched television, and socialized with and cared for her children. (*See, e.g.*, *Id.* at 248, 354.)

Plaintiff's testimony also was inconsistent in a number of other areas, including how much she could lift with her right hand (*compare Id.* at 50 *with Id.* at 58), and whether she could walk and stand with no issues (*compare Id.* at 47-48 *with Id.* at 56-57). Generally, "it is the function of the ALJ, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Salmini*, 371 F. App'x at 113 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). The ALJ did not err in finding that Plaintiff's testimony was not entirely credible.

The ALJ also considered the factors relevant to Plaintiff's symptoms outlined in 20 C.F.R. § 404.1529(c)(3), including the Plaintiff's daily activities and the type, dosage and effectiveness of medications taken to alleviate symptoms. (R. at 432-33.) Plaintiff's medical records and testimony indicate that she takes only Tylenol for her pain, and she has declined to take prescribed pain medication. (*Id.* at 35, 59-60.) In terms of daily activities, Plaintiff testified and reported to her treating physicians that she cares for herself and performs household chores such as cooking, cleaning, doing laundry, and shopping. (*See, e.g.*, *Id.* at 248, 354.) She also indicated to Dr. Perry at a February 2012 examination, approximately eight months after the date of onset of her injuries, that she was looking for work in the same field. (*Id.* at 351.) Accordingly, the ALJ's RFC determination is supported by substantial evidence.

Finally, the ALJ solicited interrogatory responses from the VE, who concluded that a person of Plaintiff's age, educational background, and RFC could perform the jobs of photocopy machine operator, machine attendant-carting, or usher/ticket taker, all of which are available in significant numbers nationally. (*Id.* at 110-12; 434-35.) Importantly, given that there was conflicting evidence as to Plaintiff's right shoulder impingement and a prior history of asthma, the ALJ confirmed with the VE that the available jobs would not expose the hypothetical individual

to respiratory irritants or overhead lifting.  (*Id.* at 112.)  The ALJ's determination is supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      September 26, 2017

_____
/s/
DORA L. IRIZARRY
Chief Judge
